IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | | |
|---|---|---|
| OCTAVIUS A. MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV00915 |
| | ) | |
| ALLSTATE CORPORATION, ALLSTATE | ) | |
| INSURANCE COMPANY, and ALLSTATE | ) | |
| FINANCIAL SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the undersigned United States Magistrate Judge, pursuant to this Court's Amended Standing Order 30, for a recommended ruling on Defendants' Motion to Dismiss Counts One and Two of Plaintiff's First Amended Complaint and to Dismiss Defendant Allstate Corporation as a Party to this Action. (Docket Entry 11.) For the reasons that follow, the Court should grant Defendants' motion to dismiss.

**Procedural Background**

Plaintiff filed a Complaint against Defendants The Allstate Corporation ("Allstate Corporation"),[1] Allstate Insurance Company ("Allstate Insurance") and Allstate Financial Services, LLC ("Allstate Financial") in the General Court of Justice, Superior Court Division in and for Forsyth County, North Carolina, alleging

---

[1] Plaintiff's Complaint names Allstate Corporation as a defendant. (See Docket Entry 8-2 at 4.) Defendants' motion to dismiss notes that the correct party name is The Allstate Corporation. (See Docket Entry 11 at 1.)

(1) abuse of process (Docket Entry 5, ¶¶ 52-59); (2) unfair and deceptive trade practices (id., ¶¶ 60-68); and (3) wrongful termination against public policy (id., ¶¶ 69-82). Plaintiff thereafter filed a First Amended Complaint in that action consisting of the same claims for relief. (Docket Entry 8-2 at 22-40.)

Defendants removed the case to this Court based on diversity of citizenship. (Docket Entry 8, ¶ 5; see also Docket Entry 1.) This action now comes before the Court on Defendants' motion to dismiss, through which Defendants seek to dismiss: (1) Allstate Corporation as a party to the lawsuit; (2) Plaintiff's claim for abuse of process; and (3) Plaintiff's claim for unfair and deceptive trade practices. (Docket Entry 11.)

**Factual Background**

The First Amended Complaint alleges the following facts:

Plaintiff, a black male, worked for Allstate Insurance for over eighteen years in various positions. (Docket Entry 8-2 at 22.) Most recently, Plaintiff held the position of Market Distribution Leader, the functional title for a district manager. (Id. at 24.) In this role, Plaintiff served seventeen counties and supervised fifty-one agents in central North Carolina. (Id.) In order to maintain his position with Allstate Insurance, Plaintiff was required to maintain his National Association of Securities

Dealers, Inc. ("NASD") affiliation with Allstate Financial. (Id. at 31).[2]

On or about April 2006, Chinedu "Steven" Onyeberechi ("Onyeberechi"), a black male, was appointed as an exclusive agent for Allstate Financial. (Id. at 25.) Plaintiff became the Designated Supervisory Principal for Onyeberechi. (Id.) Doris Williamson ("Williamson") was named Onyeberechi's New Agency Consultant. (Id.) In her role, Williamson was to provide assistance with the start up of Onyeberechi's new Allstate agency. (Id.) New Agency Consultants have the most direct supervisory and advisory responsibilities over agents during their first twelve months. (Id.) In accordance with company policy discouraging the Designated Supervisory Principal from interfering with the relationship between the New Agency Consultant and the new exclusive agent, Plaintiff allowed Williamson to maintain supervisory control over Onyeberechi's activities during the relevant time period. (Id. at 25-26.) Williamson reported directly to Lee Herring ("Herring") on Onyeberechi's activities and her concerns related to those activities. (Id. at 26.) Plaintiff received copies of these reports. (Id.)

Shortly after Onyeberechi's hiring, concerns arose regarding Onyeberechi's personal website and his residential rental property

---

[2] The NASD is now the Financial Industry Regulatory Authority ("FINRA"). (See Docket Entry 8-2 at 9); see also Newman v. First Montauk Fin. Corp., No. 7:08-CV-116-D, 2010 WL 2933281, at *2 n.1 (E.D.N.C. July 23, 2010) (unpublished) ("In July 2007, NASD and the New York Stock Exchange ("NYSE") consolidated their member-regulation operations into one self-regulatory organization, the Financial Industry Regulatory Authority ("FINRA").")

business - Millennium Properties & Investments ("Millennium Properties"). (Id.) Onyeberechi's personal website contained information regarding Onyeberechi's professional services, including as an exclusive agent for Allstate Financial. (Id.)

Williamson consulted with Allstate Financial's compliance division regarding Onyeberechi's website. (Id.) The compliance division informed Williamson that Onyeberechi's website did not comply with Allstate Financial's standards, as Allstate Financial does not permit agents to mention securities products in advertising until the agents are licensed to sell them. (Id.) Williamson expressed her concern to Onyeberechi regarding the website's mention of securities products in a May 15, 2005, email. (Id.) Subsequently, Herring and LaBertha Tomlin ("Tomlin"), the Regional Supervisory Principal, supervised Williamson's work with Onyeberechi to correct Onyeberechi's website over the next month. (Id.)[3] Plaintiff was copied on these emails. (Id.)

On June 27, 2006, Vivian Smith ("Smith"), a Field Compliance Principal for Allstate Financial, informed Onyeberechi, via email, that she had reviewed Onyeberechi's website, that it did not comply with Allstate Financial's policies, and that Onyeberchi had to make changes to the website. (Id.) Again, Plaintiff was copied on this email. (Id.)

On June 28, 2006, and continuing through the beginning of August 2006, Tomlin raised additional concerns to Onyeberechi

---

[3] Plaintiff's First Amended Complaint does not identify which Defendant employed Williamson, Herring and Tomlin. (See Docket Entry 8-2 at 22-40.)

regarding Onyeberechi's personal website and Onyeberechi's outside business activity. (Id.) Specifically, Tomlin was concerned that Onyeberechi planned to spend fifty percent of his time operating Millennium Properties. (Id. at 26-27.) Tomlin wrote to Plaintiff, explaining that she could prohibit Onyeberechi's outside business activities, but that she wanted Plaintiff's thoughts before doing so. (Id.) After Plaintiff assured Tomlin that he had reviewed Onyeberechi's business activities before Onyeberechi joined the company and that he was comfortable with Onyeberechi running the rental business, Tomlin decided not to forbid Onyeberechi from continuing to run Millennium Properties. (Id. at 27.) Allstate Insurance and Allstate Financial had no policy in place detailing the requirements for an outside business activity that would have informed an agent or employee about what types of outside business activity were acceptable. (Id.) The applicable NASD standard stated only that no registered agent could be employed by another person outside his own firm without prompt written notice to the employing firm. (Id.)

In July 2006, Tomlin expressed her concerns regarding Onyeberechi's personal website in a series of emails and other communications between Onyeberechi, Plaintiff and other Allstate Insurance and Allstate Financial employees, including Herring, Williamson and Smith. (Id. at 28.) Herring requested Plaintiff's involvement in bringing Onyeberechi's activities into compliance with Allstate Financial's regulations. (Id.) Also in July 2006, Tomlin contacted Plaintiff via conference call to notify him that

he was responsible for supervising Onyeberechi's outside business activities and helping Onyeberechi alter his personal website to comply with Allstate Financial's regulations. (Id.) Plaintiff worked with Onyeberechi to revise Onyeberechi's website to accommodate all changes requested by Smith, Tomlin and others. (Id.)

Plaintiff wrote to Tomlin on August 2, 2006, to report the changes performed on Onyeberechi's website, and further explained that Millennium Properties was listed on Onyeberechi's website as an affiliate partner not associated with Allstate. (Id.) On August 4, 2006, Tomlin announced via email that she was prohibiting Onyeberechi from running Millennium Properties based on her belief that Plaintiff had earlier reported that Onyeberechi's website referred to Millennium Properties only, but Plaintiff was now reporting that Onyeberechi's website associated Millennium Properties with Allstate. (Id.) Tomlin stated that she was going to prohibit Onyeberechi from running Millennium Properties until she had more detailed information regarding Onyeberechi's website. (Id.)

On August 7, 2006, Plaintiff replied to Tomlin explaining that Onyeberechi's mistake with the personal website was Onyeberechi's attempt to associate Millennium Properties with Allstate. (Id. at 29.) Plaintiff further noted that for two months he and Onyeberechi worked to correct the website and that the website now complied with Allstate Financial's regulations. (Id.) Plaintiff then stated that he was Onyeberechi's Designated Supervisory

Principal and he believed that any decision to prohibit Onyeberechi's outside business activities was premature since there was no articulated problem with the website. (Id.) Plaintiff requested that, if Tomlin had further concerns with Onyeberechi's website or outside business activities, Tomlin specify the activity that seemed questionable or any other compliance issue. (Id.) Plaintiff promised to answer any questions Tomlin asked him regarding Onyeberechi's website or outside business activities. (Id.)

Tomlin replied on August 8, 2006, and promised to work with Allstate Financial's compliance division on the website and stated that she would not prohibit Onyeberechi's outside business activity without the compliance division's further direction. (Id.) Plaintiff did not at any point possess the ultimate authority to approve Onyeberechi's outside business activity. (Id.) Rather, this authority rested with Tomlin. (Id. at 30.)

On August 25, 2006, Allstate Financial filed a Form U-5 Uniform Termination Notice for Securities Industry Registration with the NASD with respect to Onyeberechi ("Form U-5"). (Id.) The filing of the Form U-5 terminated Onyeberechi's affiliation with Allstate Financial. (Id.) Allstate Financial listed the sole reason for termination as: "Providing inaccurate response on the firm's outside business activity questionnaire, and additional information found by the firm did not meet firm's outside business activity approved policies." (Id.) Onyeberechi did not provide inaccurate responses to the outside business activities

questionnaire or otherwise provide inaccurate information in his capacity as an exclusive agent. (Id.)

Defendants suspended Plaintiff, alleging that he failed to properly supervise Onyeberechi's outside business activity. (Id.) Allstate Financial's Chief Compliance Officer, Phillip Hoeh, filed a Form U-5 with respect to Plaintiff with the NASD. (Id. at 31.) Said form listed the reason for terminating the affiliation between Allstate Financial and Plaintiff as: "Loss of confidence resulting from erroneous approval of a representative's outside business activity. [sic] contrary to firm's standards." (Id.) On October 30, 2006, Plaintiff's position with Allstate Insurance was terminated for failure to maintain his affiliation with Allstate Financial. (Id. at 32.) Plaintiff's termination came sixteen months before he qualified for direct investment of his retirement funds. (Id.)

Plaintiff and Onyeberechi were the only two individuals disciplined in connection with the approval of Onyeberechi's outside business activities. (Id.) No Form U-5 or other disclosures of incompetence with the NASD were filed against any other parties involved, including Tomlin, who had ultimate authority to prohibit Onyeberechi's operation of Millennium Properties. (Id. at 31.)

## Legal Standard

"[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has

later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. American Tel. & Tel. Co., 311 U.S. 223, 236 (1940). However, "[a] state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them." Id. Accordingly, "it is the duty of [a federal court facing a question of state law] to ascertain from all the available data what the state law is and apply it . . . ." Id. at 237. "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id.

Although the Court looks to state law in analyzing Plaintiff's substantive claims, "pleading standards are a matter of procedural law governed in this Court by federal, not state, law." McFadyen v. Duke Univ., ___ F. Supp. 2d ___, ___, 2011 WL 1260207, at *22 (M.D.N.C. 2011) (Beaty, C.J.) (citing Jackson v. Mecklenburg Cnty., N.C., No. 3:07-cv-218, 2008 WL 2982468, at *2 (W.D.N.C. July 30, 2008) (unpublished) ("North Carolina substantive law applies to the elements of Plaintiff's state law claims, but the Federal Rules of Civil Procedure govern procedural law and North Carolina pleading requirements, so far as they are concerned with the degree of details to be alleged, are irrelevant in federal court even as to

claims arising under state law.") (internal quotation marks and citations omitted)).  Under the applicable federal pleading standard, a complaint fails to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.  In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## Discussion

I. Plaintiff's Claims against Allstate Corporation

Plaintiff contends that Allstate Corporation is liable for Plaintiff's claims of abuse of process, unfair and deceptive trade practices and wrongful termination due to Allstate Corporation's ratification of the actions of Allstate Insurance and Allstate Financial.  (See Docket Entry 8-2 at 23.)

A. Standard

North Carolina follows the instrumentality rule for holding a parent company liable for the actions of its subsidiaries. Glenn v. Wagner, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985).  Under this standard, a parent corporation may be held liable for torts of its subsidiaries when (1) the parent corporation has "complete

domination" over the "policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own", (2) the parent used this control to commit a wrong in contravention of plaintiff's legal rights, and (3) the wrong proximately caused plaintiff's injury or loss.  Id.

B. Application

Plaintiff's First Amended Complaint alleges that "[a]ll actions and misconduct undertaken by defendants [Allstate Insurance] or [Allstate Financial], as [Allstate Corporation's] subsidiaries, were ratified and endorsed by defendant [Allstate Corporation] as the parent company, in that the conduct described herein by officers, directors, employees, agents and servants was in accordance with [Allstate Corporation's] method of business and course of dealings, notwithstanding the applicable law."  (See Docket Entry 8-2 at 23.)  Plaintiff's First Amended Complaint contains no further allegations regarding Allstate Corporation's role in the incident in question.  (See id. at 22-40.)  Defendant contends that "[s]uch bare legal conclusions are insufficient as a matter of law and, therefore, warrant the dismissal of Allstate [Corporation] as a party to this action."  (See Docket Entry 11, ¶ 5.)  This position has merit.

Plaintiff's First Amended Complaint is deficient on two fronts: (1) Plaintiff offered no factual assertions to support the contention that Allstate Corporation "ratified" the actions of Allstate Financial or Allstate Insurance (see Docket Entry 8-2 at

-11-

23); and (2) even if the Court accepted Plaintiff's conclusory allegations as true, mere ratification would fall short of the "complete domination" required by Glenn, 313 N.C. at 455, 329 S.E.2d at 330. The First Amended Complaint thus lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Iqbal, 129 S. Ct. at 1949 (internal citations omitted) (emphasis added) (quoting Twombly, 550 U.S. at 570). Accordingly, Plaintiff's claims against Allstate Corporation should be dismissed.

## II. Plaintiff's Claim for Abuse of Process

Plaintiff contends that Allstate Financial's filing of an allegedly defamatory Form U-5 in order to terminate Plaintiff's NASD affiliation with Allstate Financial and thereby provide grounds for Allstate Insurance to terminate Plaintiff's employment constitutes common law abuse of process. (See Docket Entry 8-2 at 32-34.)

### A. Standard

"Abuse of process is the misapplication of the civil or criminal process to accomplish some purpose not warranted or commanded by the process." Pinewood Homes, Inc. v. Harris, 184 N.C. App. 597, 602, 646 S.E.26 826, 831 (2007) (quoting David A. Logan & Wayne A. Logan, North Carolina Torts § 19.40 at 432 (1996)); see also Fowle v. Fowle, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965) ("[A]buse of process is the misuse of the legal process for an ulterior purpose."); Barnette v. Woody, 242 N.C. 424, 431, 88 S.E.2d 223, 227 (1955) ("Abuse of process consists in

the malicious misuse or perversion of a civil or criminal writ to accomplish some purpose not warranted or commanded by the writ."). "It consists in the malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ." Fowle, 263 N.C. at 728, 140 S.E.2d at 401 (citation omitted) (emphasis in original). Thus, "abuse of process 'requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding.'" Stanback v. Stanback, 291 N.C. 181, 201, 254 S.E.2d 611, 624 (1979) (quoting R. Byrd, Malicious Prosecution in North Carolina, 47 N.C.L. Rev. 285, 288 (1969)).

B. Application

Plaintiff's claim for abuse of process fails to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) as Plaintiff has not alleged any <u>legal</u> process which Defendants may have abused. Plaintiff contends that the filing of the Form U-5 with the NASD constitutes sufficient process. (See Docket Entry 18 at 12.) Specifically, while Plaintiff concedes that NASD is a non-governmental entity, he argues that NASD's "quasi-judicial" role in securities regulation sufficiently qualifies its actions to support an abuse of process claim. (Id.) However, Plaintiff fails to cite any case law supporting the assertion that an abuse of process claim in North Carolina would reach matters outside traditional civil and criminal proceedings. (See Docket Entry 18 at 12-13.) Independent research, likewise, has failed to reveal such

precedent.[4] Despite Plaintiff's contention that, "[u]nless plaintiff is permitted to prosecute an abuse of process claim for knowing and intentional misuse of the [Form] U-5 by defendants on the basis that the [Form] U-5 is process, defendants and all other NASD-registered firms will . . . have a public forum in which to publically discredit their former employees without penalty" (see Docket Entry 13 at 18), the Court should not expand this cause of action beyond the bounds set by the North Carolina courts. See Myers v. Sessoms & Rogers, P.A., ___ F. Supp. 2d ___, ___, 2011 WL 683914, at *3 (E.D.N.C. 2011) ("Federal courts applying state laws should not create or expand a state's common law or public policy.") (citing Time Warner Entm't-Advance/Newhouse P'ship v.

---

[4] Moreover, authority from other jurisdictions supports the contrary conclusion. See, e.g., Ioppolo v. Rumana, No. 06-193-JJB, 2011 WL 3568863, at *5 (M.D. La. Aug. 15, 2011) (unpublished) (finding proceedings with American Association of Neurosurgeons not "process" for abuse of process claim as "Louisiana jurisprudence suggests that 'process' (as that term is contemplated in an abuse of process claim) comprises only legal process and/or court process"); Tom v. GMAC Mortgage, LLC, No. 10-00653 SOM/BMK, 2011 WL 2133705, at *10 (D. Haw. May 25, 2011) (unpublished) ("The nonjudicial foreclosure process does not involve 'legal process' because it occurs outside of the range of procedures incident to litigation, and instead involves actions unrelated to court authority." (internal quotation marks and citations omitted)); Yanik v. Countrywide Home Loans, Inc., No. CV 10-6268 CAS (RZx), 2010 WL 4256312, at *6 (C.D. Cal. Oct. 18, 2010) (unpublished) ("Plaintiff fails to state a claim for abuse of process because there is no allegation that any defendant misused a court proceeding. Although it is not entirely clear from plaintiff's complaint, the allegation appears to be that defendants initiated a non-judicial foreclosure."). Even courts that have adopted "broad" views of process for abuse of process claims seemingly fail to extend the tort as far as Plaintiff asks in the instant case. See, e.g., Reichart v. City of New Haven, 674 N.E.2d 27, 31 (Ind. Ct. App. 1996) ("'Process' should not be 'limited to the strict sense of the term, but [should be] broadly interpreted to encompass the entire range of procedures incident to litigation . . . . This broad reach of the 'abuse of process tort can be explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of the judicial machinery . . . .'") (emphasis added) (quoting Groen v. Elkins, 551 N.E.2d 876, 878 n.3 (Ind. Ct. App. 1990), and Barquis v. Merchants Collection Assn., 496 P.2d 817, 824 (Cal. 1972)).

Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314-15 (4th Cir. 2007)). Accordingly, Plaintiff's claim for abuse of process should be dismissed.[5]

III. Plaintiff's Claim for Unfair or Deceptive Trade Practices

Plaintiff contends that his termination from Allstate Insurance, which arose from Allstate Financial's filing of the allegedly defamatory Form U-5 that resulted in his loss of affiliation with Allstate Financial, violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. (See Docket Entry 8-2 at 34-35.)

A. Standard

"[A UDTPA] claim under [North Carolina law] requires proof of three elements: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) proximately causing actual injury to plaintiff or plaintiff's business." AG Sys., Inc. v. United Decorative Plastics Corp., 55 F.3d 970, 974 (4th Cir. 1995) (internal brackets and quotation marks omitted); accord Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148

---

[5] Defendants have also argued that Plaintiff's claim for abuse of process should fail because either (1) Plaintiff failed to allege that Defendants took any action after the filing of the Form U-5 (see Docket Entry 21 at 3-4); or (2) the action accrued at the time of filing of the Form U-5 and thus is barred by the applicable three-year statute of limitations (see id. at 4-5). A finding that the filing of the Form U-5 does not constitute legal process for purposes of an abuse of process claim renders Defendants' alternate arguments moot.

-15-

(4th Cir. 1987) (citing Marshall v. Miller, 302 N.C. 539, 276 S.E.2d 397, 403 (1981), and Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452-53, 279 S.E.2d 1, 7 (1981)). "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C. Gen. Stat. § 75-1.1 is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (internal citations omitted).

"Proof of unfair or deceptive trade practices entitles a plaintiff to treble damages, and thus constitutes a boilerplate claim in most every complaint based on a commercial or consumer transaction in North Carolina." Allied Distrib., Inc. v. Latrobe Brewing Co., 847 F. Supp. 376, 379 (E.D.N.C. 1993). Accordingly, "[t]he North Carolina courts have warned that application of this statute is not to be unfettered. Some type of egregious or aggravating circumstance must be alleged and proved before the statute's provisions may be applied." Id. (internal quotation marks and citations omitted).

In particular, under North Carolina law, a presumption exists against claims for unfair and deceptive trade practices that arise from employer-employee relationships. Dalton, 353 N.C. at 658, 548 S.E.2d at 711. "The rationale behind this general rule is that pure employer-employee disputes are not sufficiently 'in or affecting commerce' to satisfy the second element of a UDTPA claim." Gress v. Rowboat Co., Inc., 190 N.C. App. 773, 777, 661 S.E.2d 278, 282 (2008). However, "the mere existence of an employer-employee relationship does not in and of itself serve to

-16-

exclude a party from pursuing an unfair trade or practice claim." Dalton, 353 N.C. at 656, 548 S.E.2d at 710 (internal citations omitted). The North Carolina courts have found limited exceptions where the circumstances were "in or affecting commerce" to such a degree as to rise above the level of the typical employer-employee dispute. See, e.g., Sara Lee Corp. v. Carter, 351 N.C. 27, 519 S.E.2d 308 (1999) (allowing UDTPA claim in employer-employee relationship where employee, as buyer for employer, bought computer parts and services at excessive prices from companies which he owned without employer's knowledge); Gress, 190 N.C. App. at 775, 661 S.E.2d at 281 (permitting UDTPA claim where owner of corporation and potential purchaser of corporation created fictitious employment contract as cover to conduct due diligence).

### B. Application

The First Amended Complaint failed to allege facts establishing that the actions of Defendants were sufficiently "in or affecting commerce" to support a claim under the UDTPA. The presumption against UDTPA claims in employer-employee disputes is premised on the rationale "that pure employer-employee disputes are not sufficiently 'in or affecting commerce' to satisfy the second element of a UDTPA claim." Gress, 190 N.C. App. at 777, 661 S.E.2d at 282. Although Plaintiff contends that he was not employed by Allstate Financial, the filer of the Form U-5 (see Docket Entry 18 at 17), and that his employment status with Allstate Insurance was, for all intents and purposes, terminated prior to said filing (see Docket Entry 18 at 17-18), Plaintiff's allegations of how the

-17-

instant matter affected commerce remain those which would arise from a standard employer-employee relationship. See Smith v. Waverly Partners, LLC, No. 3:10CV28, 2011 WL 1655592, at *5 (W.D.N.C. Apr. 29, 2011) (unpublished) ("Plaintiff's lack of an employment relationship with Defendants does not preclude her claim from arising out of an employment relationship or from otherwise being one that fails to affect commerce. Rather, statements made by non-employer Defendants . . . can be properly defined as arising out of the employment relationship and not affecting commerce.") (citing Esposito v. Talbert & Bright, Inc., 181 N.C. App. 742, 746, 641 S.E.2d 695, 697-98 (2007)).

If the Court accepted Plaintiff's argument that Defendants' actions were "in or affecting commerce" in that they "impeded defendants' competitors from acquiring [Plaintiff's] talents as an employee and manager" (Docket Entry 18 at 16) and "affected and continue[] to affect defendant's competitors and [Plaintiff's] professional reputation and subsequent employment opportunities in the Greensboro insurance marketplace" (id.), the Court would effectively permit run of the mill employer-employee disputes to support a UDTPA claim. This conclusion would directly contradict the basis for the presumption against such findings as put forth by the courts of North Carolina. Plaintiff's contentions do not allege facts sufficient to support a conclusion that the instant case affected commerce to such a degree as to warrant application of any previously recognized exception to this presumption. See, e.g., Sara Lee, 351 N.C. 27, 519 S.E.2d 308; Gress, 190 N.C. App.

at 775, 661 S.E.2d at 281. "The UDTPA is not . . . appropriate for resolving employment disputes. . . . [A]ll of [P]laintiff's allegations concern the manner in which his employment was terminated. The [C]ourt [should], therefore, dismiss the UDTPA claim." Johnson v. Wal-Mart Stores East, L.P., No 3:10CV659, 2011 WL 2183155, at *6 (W.D.N.C. June 6, 2011) (unpublished).[6]

## Conclusion

Plaintiff's claims against Allstate Corporation lack sufficient factual assertions to allow this Court to make a determination of plausibility as required by Iqbal, and therefore fail to state a claim. Furthermore, Plaintiff's allegations in support of his claims for abuse of process and unfair and deceptive trade practices fall short with respect to a necessary element.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss Counts One and Two of Plaintiff's First Amended Complaint and to Dismiss Defendant Allstate Corporation as a Party to this Action (Docket Entry 11) be **GRANTED**; however, as Plaintiff's claim for wrongful termination against public policy remains against Allstate Insurance and Allstate Financial, the Clerk should schedule an initial pre-trial conference.

                                        /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                          **United States Magistrate Judge**
September 27, 2011

---

[6] In light of this conclusion, the Court need not address Defendants' argument as to whether the Form U-5 was defamatory *per se*. (See Docket Entry 12 at 10-12.)

-19-